UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


RONALD WADE-BEY,
a/k/a Ronald Irvin,

    Plaintiff,

v

NORMAN FLUERY, Officer,
JOHN CROMEL, Officer,
RANDAL OLLIS, Officer,
NANCY BLACKFORD, Nurse, and
WAYNE TRIERWEILER, Grievance Coord.,

    Defendants.
_____/

Case No. 2:07-cv-117

Hon. Wendell A. Miles

ORDER ON PLAINTIFF'S MOTION FOR RECONSIDERATION
AND OTHER MOTIONS

Plaintiff Ronald Wade-Bey, also known as Ronald Irvin, is a Michigan prisoner. In his *pro se* complaint, he asserts claims under 42 U.S.C. § 1983 against various persons employed by the Michigan Department of Corrections, including three corrections officers, a nurse, and a grievance coordinator. On September 11, 2007, United States Magistrate Judge Timothy P. Greeley issued a Report and Recommendation ("R & R") that plaintiff's complaint be dismissed for failure to state a claim. On October 16, 2007, the court issued an Order and Judgment approving and adopting the R & R. The matter is currently before the court on the following motions filed by plaintiff: (1) "Motion for Leave to File a Supplement to Objections" (docket no. 17); (2) "Motion for Reconsideration" (docket no. 20); (3) "Motion to Amend/Alter the Judgment and for a New Trial" (docket no. 21); (4) "Motion to Supplement/Amend Plaintiff's

Previous Motion for Reconsideration and to Alter/Amend the Judgment and for a New Trial" (docket no. 25); (5) "Motion for Leave to File Out-of-Time Exhibit" (docket no. 27); and (6) "Motion for Leave to File Affidavit of Timothy Fox" (docket no. 29).

For the reasons to follow, the motions for reconsideration and to alter/amend the judgment are granted in part and denied in part, and the remaining listed motions are denied.

**Discussion**

Plaintiff's motions for reconsideration and to alter or amend the judgment seek reconsideration of the court's Order and Judgment approving and adopting the R & R, in addition to relief under Fed.R.Civ.P. 59. W.D. Mich. L.Civ.R. 7.4(a) provides that a movant seeking reconsideration "shall not only demonstrate a palpable defect by which the Court and the parties have been misled, but also show that a different disposition of the case must result from a correction thereof." Fed.R.Civ.P. 59(e) provides for motions to alter or amend a judgment.[1] A motion to alter or amend judgment under Rule 59(e) may be granted (1) to correct a clear error of law; (2) to account for newly discovered evidence or an intervening change in the controlling law; or (3) to otherwise prevent manifest injustice. GenCorp, Inc. v. Am. Int'l Underwriters, 178 F.3d 804, 834 (6th Cir. 1999). To constitute "newly discovered evidence," the evidence must have been previously unavailable. Id. "Further, under Rule 59(e), parties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued." Roger Miller Music, Inc. v. Sony/ATV Publishing, L.L.C., 477 F.3d 383,

---

[1]Plaintiff also seeks relief under Fed.R.Civ.P. 59(a), which applies to motions for new trial. However, because there was no trial and plaintiff's claims were dismissed before service of the complaint, Rule 59(a) does not apply.

395 (6th Cir. 2007).

In support of his request for reconsideration, plaintiff argues that the court should have considered objections which he filed to the R & R. In it Order and Judgment, the court noted that the R & R had been duly served on the parties and "no objection has been made thereto within the time required by law." Plaintiff expresses confusion regarding whether this means that the court had not received *any* objections, or whether the court had simply not received *timely* objections. Plaintiff then states that he "did in fact mail in his initial objections on September 21, 2007 which would have made the objections timely[.]" Motion for Reconsideration at 3. However, plaintiff later appears to contradict this statement, stating that he had also forwarded a motion for enlargement of time together with his objections. Id. at 4.

The court's statement that no objections to the R & R were received "within the time required by law" is an accurate one. Although plaintiff states that he mailed objections on September 21, 2007, these purported objections were not received by the court.[2] On October 11, 2007, a full month after the R & R was issued, plaintiff mailed a motion for leave to file what he called a "Supplement to Objections" under Fed.R.Civ.P. 15(d) (docket no. 17). The documents which plaintiff mailed on October 11, 2007 were received by the court and docketed on October 15, 2007, the day before the court entered its Order and Judgment approving the R & R.

Therefore, at the time it entered its Order and Judgment, the court did not have before it plaintiff's purported initial objections to the R & R. The court also concedes that before entering

---

[2]This is not a case where the court received timely objections but failed to consider them. Cf. Thompson v. Chandler, No. 00-6384, 2002 WL 370002 (6th Cir. March 6, 2002) (court should have considered objections to magistrate judge's report which were timely mailed and received six days after mailing).

3

the Order and Judgment, it did not review the "Supplement to Objections" plaintiff sought leave to file pursuant to Fed.R.Civ.P. 15(d). Although Rule 15(d) provides that the court may permit a party to serve a supplemental "pleading" which sets out "any transaction, occurrence, or event that happened after the date of the pleading to be supplemented," objections to a magistrate judge's R & R are not a "pleading" as defined by the Federal Rules. See Fed.R.Civ.P. 7(a). Moreover, because the court at that time had not received plaintiff's purported "initial objections," there was nothing to be supplemented in any event.

However, to the extent that plaintiff contends that his "initial objections" were timely mailed, plaintiff does provide some factual support for his contention, even though there appears to be some inconsistency in what he claims. For one thing, as noted above, the objections which plaintiff claims to have timely mailed were not received. Second, it is noted that plaintiff appears to contradict himself by stating that his mailing of September 21, 2007 included a motion for enlargement of time, which would have been unnecessary if plaintiff had in fact timely mailed his objections.[3] Third, plaintiff has sought leave to file an affidavit of fellow prisoner Timothy Fox, who purportedly witnessed plaintiff putting two envelopes in a prison mail receptacle on September 21, 2007. Because this purported affidavit is unsigned, the court will not permit it to be docketed as part of the record. However, it is nonetheless noted that the proposed Fox affidavit is inconsistent with plaintiff's own contention that he was confined to his cell on September 21, 2007 and therefore required to rely on corrections officials to ensure that

---

[3] As will be noted in greater detail below, if plaintiff did mail his objections on September 21, 2007, they were timely.

his mail was processed.  See Motion for Reconsideration (docket no. 20) at 1-2().[4]

It is also noted that even though plaintiff contends that his "initial objections" were timely mailed, neither his motion for reconsideration or motion to alter or amend identifies the contents of those purported objections.  By way of yet another proposed "supplemental" submission, plaintiff has for the first time attempted to belatedly provide the court with a copy of the objections which he contends he either timely mailed or gave to an officer for mailing on September 21, 2007.  These objections are included as an attachment to the Motion to Supplement/Amend Plaintiff's Previous Motion for Reconsideration and to Alter/Amend the Judgment and for a New Trial (docket no. 25).   Plaintiff contends that these objections must be considered timely filed pursuant to Patterson v. Mintzes, 717 F.2d 284 (6th Cir. 1983).  More specifically, plaintiff argues that Patterson stands for the proposition that  "[w]hen objections are before the court and considered by the court and filed by the court, those objections are considered timely filed[.]"  Motion to Amend/Alter the Judgment and for a New Trial (docket no. 21) at 2.

Patterson does not stand for the proposition that this court must consider as timely objections which were not received by the court until after its decision.  Patterson presented the

---

[4]Even if the court were to consider the contents of Fox's unsigned affidavit, it is noted that a portion of the affidavit consists of inadmissible hearsay, to the extent that Fox states what plaintiff told him was contained within the envelopes being mailed.
 Plaintiff contends that prison officials have been interfering with his mail, and he has submitted other exhibits which he believes support his contention.  Motion to Supplement/Amend Plaintiff's Previous Motion for Reconsideration and to Alter/Amend the Judgment and for a New Trial (docket no. 25), Exhibit A1 (Affidavit of Shayarto Perkins); Motion for Leave to File Out-of-Time Exhibit (docket no. 27), Exhibit A ("Hello Ronnie" letter dated October 13, 2007).  However, these exhibits do not provide any specific factual support for plaintiff's assertion that actions of prison officials caused his purported objections to the R & R not to be mailed.

5

question of whether the plaintiff waived the right to appeal from the judgment of the district court for failure to timely file written objections to the magistrate's report and recommendation. The plaintiff had tendered his written objections to the district court on the twelfth day after receiving the magistrate judge's report, and the district court had filed the written objections without requiring the plaintiff to move for an extension of time within which to file and/or demonstrate excusable neglect. The district court also pronounced in its judgment that the untimely written exceptions had been considered together with the magistrate's report and recommendation. The Sixth Circuit held that under the circumstances, the waiver rule did not apply to bar appellate review. 717 F.2d at 286.

The factual situation presented in Patterson is not presented here.[5] In this case, plaintiff's objections were in fact not received by the court, which therefore did not consider them in reviewing the R & R. The court in this case likewise did not consider plaintiff's proposed "supplemental" objections, which were attached to a motion for leave to file which was received by the court only one day before it entered its Order and Judgment. Nothing in Patterson requires this court to consider the substance of objections which were not received by the court. And certainly nothing in Patterson would further require the court to consider additional "supplemental" objections which plaintiff never even attempted to timely mail.

The rule which does apply here is not that of Patterson, but rather the mailbox rule. According to this rule, certain *pro se* prisoner submissions must be deemed filed at the time they are delivered by the prisoner to the prison authorities for forwarding to the court clerk. Houston

---

[5]Moreover, to the extent that plaintiff's wishes to argue that he has not waived any right to appeal, his arguments are not properly directed to this district court.

v. Lack, 487 U.S. 266, 276 (1988). This rule has been applied to a wide variety of prisoner filings, including objections to magistrate judges' reports. See Towns v. United States, 190 F.3d 468, 469 (6th Cir. 1999) (citation omitted).

Here, the R & R was filed and mailed on September 11, 2007, and timely objections were to be filed within ten days. Under Fed.R.Civ.P. 6(a), the intermediate weekend days must be excluded when computing this time period because the prescribed period is less than eleven days. Additionally, under Fed.R.Civ.P. 6(d) (formerly 6(e)), three days must be added to the ten-day time period because plaintiff was served with the R & R by mail. When these computations are made to the applicable time period, plaintiff had until September 28, 2007 to file his objections. Plaintiff alleges that he mailed his objections on September 21, although the court has no record of having received them.

At least one court has extended the mailbox rule to the situation where a prisoner's submission is never received by the court, provided the prisoner "diligently follows up once he has failed to receive a disposition from the court after a reasonable period of time." Huizar v. Carey, 273 F.3d 1220, 1223 (9th Cir. 2001). Therefore, the question is whether plaintiff has established that he actually timely mailed the objections and that he diligently followed up once he failed to receive a disposition from the court after a reasonable period of time.

Plaintiff filed a motion for reconsideration nine days after receiving the court's Order and Judgment, which indicated that no timely objection had been made to the R & R. Therefore, the court concludes that the requirement that plaintiff diligently follow up is satisfied. The touchier question is whether plaintiff has shown that he timely mailed the objections in the first place. As indicated above, plaintiff's statements are inconsistent regarding how he mailed them. At one

point he indicates that he was confined to his cell and therefore not able to mail the objections, while elsewhere plaintiff indicates that he did mail the objections himself, but only after he knew that prison staff had already picked up the day's mail for delivery to the prison mailroom. (This latter version of the story is accompanied by plaintiff's contention that he at first sent a letter to an prison officer requesting "expedited" mail service, but got no response. It is unclear why plaintiff would need to have his objections "expedited" if they were timely.) Plaintiff has also submitted a copy of a letter to the court clerk which he claims to have mailed with his objections, in which he states that he was splitting the several-page-long document into two separate metered envelopes containing the name of another prisoner, from whom plaintiff borrowed the envelopes. It is unclear whether prison rules permit prisoners to mail documents under the name of another prisoner; if this is not allowed, this could explain why plaintiff's objections were not forwarded by prison officials. This could also explain why plaintiff felt it necessary to include a motion for enlargement of time, which would have been unnecessary if the objections were in fact timely and properly mailed. Whatever the case, the court concludes that plaintiff's contention that the objections were timely mailed is simply not credible.

Even if the objections which plaintiff claims to have timely mailed on September 21, 2007 had been received by the court, those objections would not have caused the court to rule any differently on the majority of plaintiff's claims. The Magistrate Judge correctly ruled that plaintiff had not stated a cognizable First Amendment retaliation claim against defendant Trierweiler in connection with plaintiff's placement on modified grievance access. See Jackson v. Madery 158 F. App'x 656, 660 (6th Cir. 2005) ("Being placed on modified access status would not deter a person of ordinary firmness from pursuing non-frivolous grievances against

prison officials, within the courts or the prison administrative system"); Walker v. Michigan Dept. of Corrections, 128 F. App'x 441, 446 (6th Cir. 2005) ("an ordinary person of reasonable firmness would not be deterred from filing legitimate grievances by a policy that merely provided that a grievance officer would screen frivolous grievances. Since the only penalty for filing a grievance found to be frivolous is extension of modified status, there should be no chilling effect on the filing of non-frivolous grievances").

In addition, and although it was not noted by the court at the time of its ruling, any claims which plaintiff has attempted to assert against defendant Trierweiler are time-barred. For all § 1983 actions, federal courts apply the state personal injury statute of limitations. Wallace v. Kato, 127 S. Ct. 1091, 1093 (2007). In Michigan, the general statute of limitations for personal injury actions is three years. See Mich. Comp. Laws § 600.5805(10). "However, federal law determines the accrual of civil rights claims." Collyer v. Darling, 98 F.3d 211, 220 (6th Cir. 1996). "[T]he statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." McCune v. City of Grand Rapids, 842 F.2d 903, 905 (6th Cir. 1988); see also Collyer, 98 F.3d at 220 (limitations period "begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred").

Here, plaintiff's complaint expressly alleges that he became aware that he had been placed on modified grievance access status on June 1, 2004. Complaint at 4. Therefore, the limitations period began to run on that date, at the very latest. However, plaintiff did not mail his complaint in this action until June 6, 2007, days after the three-year limitation period had expired. See Cook v. Stegall, 295 F.3d 517, 521 (6th Cir. 2002) (under "mailbox rule," petition is

9

deemed filed when prisoner gives it to prison officials for filing).  Given these facts, any claims which plaintiff might have had against Trierweiler are clearly time-barred.

Plaintiff's claim against defendant Fluery based on an alleged retaliatory search of plaintiff's cell is also time-barred.  Plaintiff's complaint expressly alleges that Fluery conducted the search on June 3, 2004.  Therefore, the limitations period began to run on that date.  However, as noted above, plaintiff did not mail his complaint until June 6, 2007, days after the three-year limitation period had expired.

A complaint "is frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989).  A claim has no basis in law where the face of the complaint makes it manifestly clear that the claim is time-barred.  The Sixth Circuit has held a claim is properly dismissed as frivolous if it is barred the by the applicable statute of limitations.  Dellis v. Corrections Corp. of America, 257 F.3d 508, 511 (6th Cir. 2001).  Under the circumstances, dismissal of all claims against defendant Trierweiler as well as the claim against defendant Fluery based on the alleged retaliatory search was proper.

In addition, with respect to plaintiff's due process claims based on both the June 6, 2004 and October 7, 2004 misconduct charges, however, the Magistrate Judge concluded that even if plaintiff had been deprived of a liberty or property interest, plaintiff received all process he could have been due under the law.  "False accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are adjudicated in a fair hearing." Jackson, 158 F. App'x. at 662 (citations omitted).  Here, plaintiff received hearings, even though he now confirms that he was a lifer not subject to loss of good time credits and therefore a finding that he was guilty of misconduct could not extend his confinement.  Nothing

10

in plaintiff's filings received after the Magistrate Judge issued his R & R suggests that his conclusion, which was adopted by the court, was erroneous. Under the circumstances, the court denies plaintiff's request for reconsideration of the disposition of his due process claims against defendants Fluery, Cromel, Blackford, and Ollis.

Plaintiff has asserted additional claims arising from what he alleges was the participation of defendants Fluery, Cromel, Ollis, and Blackford in false misconduct charges made against him, in retaliation for his prior complaints and use of the grievance process. The Magistrate Judge concluded that plaintiff's claims against defendants Fluery and Cromel based on plaintiff's conviction on a false June 6, 2004 misconduct charge were not cognizable because plaintiff had not alleged that he did not forfeit good time credit for the month of his conviction nor shown that his conviction on the misconduct charge had been invalidated. R & R at 8-9.[6]

Had he filed timely objections, plaintiff would apparently have stated that he is serving a life sentence and for that reason he is not eligible to earn good time credits. Motion to Supplement/Amend Plaintiff's Previous Motion for Reconsideration and to Alter/Amend the Judgment and for a New Trial (docket no. 25), Exhibit D (Plaintiff's Objections to the Magistrate's Report and Recommendation Dated September 11, 2007) at 7. Had the court received plaintiff's purported objections, it therefore would most likely have applied a substantive analysis to plaintiff's First Amendment claims based on the June 6, 2004 misconduct charge written by Fluery and witnessed by Cromel, as well as to plaintiff's similar First

---

[6]The Supreme Court has clarified that where no good time credits or the duration of a sentence are at issue, a section 1983 action seeking damages based on prison misconduct proceedings may proceed even absent an allegation that the proceedings were terminated in the prisoner's favor. Muhammad v. Close, 540 U.S. 749, 752-755 (2004).

Amendment claim based on an October 7, 2004 misconduct charge written by Blackford and witnessed by Ollis. Plaintiff alleges that defendants Fluery and Cromel conspired to violate his First Amendment rights by causing him to be convicted of false misconduct charges, in retaliation for plaintiff's writing a letter to the prison warden expressing fear for his safety and health as a result of threats made by staff (in the case of Fluery), and in retaliation for plaintiff's threatening to sue Fluery for depriving him of breakfast (in the case of both Fluery and Cromel). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999).

Plaintiff's alleged letter to the warden may be equated with the filing of a grievance, which is constitutionally-protected conduct for which a prisoner cannot be subjected to retaliation, provided, of course, that the grievance is not frivolous. See Scott v. Stone, 254 F. App'x 469, 472 (6th Cir. 2007) ("This court has held that the filing of non-frivolous grievances is protected conduct under the First Amendment").[7] However, plaintiff's threat to sue Fluery over being deprived of breakfast is another matter. Although it is well established that prisoners have a constitutional right of access to the courts, e.g., Thaddeus-X, 175 F.3d at 391, the filing of a frivolous lawsuit would not be protected activity. Because it would be virtually unheard of for a

---

[7]Although a hearing officer concluded that plaintiff's allegations of threats against him appeared to be "a product of an active imagination," Plaintiff's Exhibit D (filed as part of docket no. 9), the court assumes, for present purposes, that plaintiff's allegations were not frivolous.

12

prisoner to prevail in a lawsuit complaining of deprivation of a single meal, the court cannot assume that plaintiff's threat to sue Fluery constituted protected conduct. Therefore, although plaintiff's allegation that he wrote to the warden expressing fear for his safety is protected conduct, his threat to sue Fluery over missing breakfast is not. The former satisfies the first element of plaintiff's retaliation claim, while the latter does not.

Because plaintiff has alleged that Fluery and Cromel were responsible for his conviction of a major misconduct charge, he has adequately alleged a sufficiently adverse action to satisfy the second element of a retaliation claim. Thomas v. Eby, 481 F.3d 434, 441 (6th Cir. 2007). However, the third element of plaintiff's retaliation claim requires him to allege that the adverse action was motivated, in least in part, by the protected conduct. "Because the question is whether the adverse action was taken (at least in part) because of the protected conduct, the causation inquiry centers on the defendant's motive." Id.

"Recognizing that the ultimate fact of retaliation for the exercise of a constitutionally protected right rarely can be supported with direct evidence of intent that can be pleaded in a complaint, . . . courts have found sufficient complaints that allege a chronology of events from which retaliation may be inferred." Murphy v. Lane, 833 F.2d 106, 108 (7th Cir. 1987). "Conversely, alleging merely the ultimate fact of retaliation is insufficient." Id. Here, upon reconsideration, the court concludes that plaintiff's complaint does set forth a chronology of events from which retaliatory motivation on the part of defendants Fluery and Cromel could arguably be inferred. These alleged events include plaintiff's letter to the warden expressing fear for his safety and health, followed by Fluery's search of plaintiff's legal materials (during which Fluery could have seen a copy of the letter), followed by Fluery's admonition to plaintiff

to "be careful," followed by Fluery's accusing plaintiff of misconduct, backed up by a witness statement from Cromel.

Similarly, plaintiff's retaliation claim against defendants Blackford and Ollis is based on plaintiff's allegation that Blackford, backed up by a witness statement from Ollis, falsely accused plaintiff of major misconduct after he filed various grievances against them.  Given these allegations, the court concludes that plaintiff has also minimally pled the elements of a retaliation claim against Blackford and Ollis.[8]

Finally, although the R & R did not specifically address certain claims against Ollis in connection with his allegedly depriving plaintiff of law books and making racial slurs on or about September 13, 2004, the court is convinced that these were properly dismissed for failure to state a claim.  Plaintiff alleges that after he brought unspecified grievances against Ollis, both Ollis and another officer, Mason (who is not a named defendant in this action), denied him use of law books and used racial slurs against him.  Plaintiff appears to attempt to assert an additional claim of retaliation against Ollis, in addition to a claim of violation of his right of access to the courts based on these allegations.

---

[8]The court concludes that plaintiff has minimally pled the second element of a retaliation claim – sufficiently adverse action – in connection with the October 7, 2004 incident, even though it appears that plaintiff had already been re-classified to segregation at that time and therefore it is unclear what potential sanctions plaintiff could have faced had he been convicted of the major misconduct.  Plaintiff's exhibits show that he was convicted on a lesser charge of insolence, for which he was punished with 10 days loss of privileges.  Exhibit G2 (included as part of docket no. 9).  Cf. Brown v. Crowley, 312 F.3d 782, 789 (6th Cir. 2002) (although plaintiff was already in administrative segregation and a hearing officer ultimately found him not guilty of major misconduct charge, issuance of charge had subjected plaintiff to the risk of significant sanctions).

14

As for the claim of retaliation against Ollis based on the alleged deprivation of law books and use of racial slurs on a single date, these acts are *de minimis* and fail to rise to the level required to state a claim. Plaintiff does not allege that he was systematically denied the use of law books or subjected to continued racial harassment; rather he alleges only one incident. An isolated incident is not likely to deter a person of ordinary firmness from pressing on with his lawsuit. See Thaddeus-X, 175 F.3d at 396 ("It is not necessarily true . . . that every action, no matter how small, is constitutionally cognizable").

Moreover, with respect to his apparent claim based on alleged denial of access to the courts, plaintiff has not alleged facts indicating the purpose for which he needed the law books. The duty to provide inmates with affirmative assistance does not extend to all legal matters. See Glover v. Johnson, 75 F.3d 264, 267-268 (6th Cir. 1996). In addition, plaintiff has failed to allege actual prejudice to litigation challenging his conviction or conditions of confinement. This failure is fatal to his attempt to state a claim for denial of access to the courts. See Christopher v. Harbury, 536 U.S. 403, 415 (2002) ("the named plaintiff must identify a 'nonfrivolous,' 'arguable' underlying claim . . . It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation").

## **Conclusion**

The court HEREBY ORDERS as follows:

1. Plaintiff's motions for reconsideration and motion to amend/alter the judgment are granted in part and denied in part. The court's Order and Judgment is vacated to the extent that

it adopts the Magistrate Judge's recommendation to dismiss plaintiff's retaliation claims against defendants Fluery, Cromel, Blackford, and Ollis based on the incidents alleged to have occurred on June 6, 2004 and October 7, 2004.  These particular claims are reinstated, while the dismissal stands as to all remaining claims.

    2.  Plaintiff's motions for leave to file a supplement to objections, to supplement his motions, for leave to file out-of-time exhibit, and for leave to file the affidavit of Timothy Fox are denied.

    3.  This action is referred to United States Magistrate Judge Timothy P. Greeley, pursuant to 28 U.S.C. § 636(b)(1)(A), for further pretrial proceedings, including resolution of any pending motions not addressed in this decision.

    So ordered this 8th day of July, 2008.

    /s/ Wendell A. Miles
Wendell A. Miles, Senior Judge