UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RONALD IRVIN #168107,

    Plaintiff,

v.                                                                                                Case No. 2:07-cv-117
                                                                                           HON. ROBERT HOLMES BELL

NORMAN FLUERY, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

        Plaintiff Ronald Irvin, an inmate at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Corrections Officer Norman Fluery, Corrections Officer John Cromel, Corrections Officer Randall Ollis, Nurse Nancy Blackford, and Grievance Coordinator Wayne Trierweiler. Plaintiff alleges in his complaint that while he was confined at the Oaks Correctional Facility, he was placed on modified grievance access, but was not informed of this action. On May 29, 2004, Plaintiff was transferred to LMF and, shortly thereafter, he attempted to file a grievance on LMF's medical staff without following the procedure for obtaining a grievance form while on modified access. On June 2, 2004, Defendant Trierweiler extended Plaintiff's modified access status for an additional 30 days.

        On June 3, 2004, Defendant Fluery searched Plaintiff's cell and allegedly altered a legal document. Plaintiff requested grievance forms from Defendant Trierweiler so that he could file a grievance on Defendant Fluery and another on Defendant Trierweiler. Plaintiff claims that Defendant Trierweiler told Plaintiff that he would not be given forms. On June 6, 2004, Defendant

Fluery allegedly refused to give Plaintiff his high blood pressure medicine and wrote a false misconduct on Plaintiff, claiming that Plaintiff had threatened her. Defendant Cromell falsely claimed that he heard Plaintiff say he was going to "get that nurse, she ain't nothing but white trash . . . she'll get hers." Plaintiff claims that he only threatened to sue Defendant Fluery and not to physically harm her.

As a result of the misconduct ticket, Plaintiff was placed in administrative segregation pending his hearing. Following his hearing, Plaintiff was found guilty of the major misconduct and was reclassified to administrative segregation. While in administrative segregation, Plaintiff filed various grievances and complaints against Defendants Blackford and Ollis. In response to Plaintiff's grievances and complaints, Defendant Ollis and Corrections Officer Mason allegedly denied Plaintiff use of law books and used racial slurs against him on September 13, 2004. Plaintiff also complained to Defendant Blackford's supervisor regarding the alleged denial of high blood pressure medicine in retaliation for Plaintiff's use of the grievance system. On October 7, 2004, Defendant Blackford wrote a misconduct report on Plaintiff, asserting that Plaintiff had threatened to get her. This misconduct charge was subsequently dismissed during the hearing.

Plaintiff's complaint asserted that Defendants' conduct violated his First Amendment right to be free from retaliation and his Fourteenth Amendment right to procedural due process. Plaintiff seeks compensatory and punitive damages, as well as equitable relief.

Plaintiff's complaint was initially dismissed by the court on October 16, 2007, for failing to state a claim (docket #16). However, on July 8, 2008, Plaintiff's motion for reconsideration was granted, in part, reinstating Plaintiff's retaliation claims against Defendants Fluery, Cromel, Blackford and Ollis (docket #31).

Presently before the Court is a Motion for Summary Judgment filed by Defendants Ollis, Blackford, Fluery and Cromell pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants claim that they are entitled to summary judgment on Plaintiff's claims that he was subjected to false misconduct tickets in retaliation for his use of the grievance procedure.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Defendants contend that Defendant Cromell is entitled to summary judgment on Plaintiff's retaliation claim because Plaintiff was not engaged in protected conduct. The court notes that Plaintiff claims that Defendant Cromell gave a false statement against him because Defendant Cromell witnessed Plaintiff threatening to "file suit" against Defendant Fleury over being deprived of a single meal. As noted previously by the court:

> Although it is well established that prisoners have a constitutional right of access to the courts, *e.g., Thaddeus-X*, 175 F.3d at 391, the filing of a frivolous lawsuit would not be protected activity. Because it would be virtually unheard of for a prisoner to prevail in a lawsuit complaining of deprivation of a single meal, the court cannot assume that plaintiff's threat to sue Fleury constituted protected conduct.

(July 8, 2008, order on Plaintiff's motions, pp. 12-13, docket #31.) Therefore, the court concludes that Plaintiff has failed to meet the first element of a retaliation claim with regard to Defendant Cromell.

Defendants also assert that with regard to the retaliation claim against Defendant Fleury, Plaintiff has failed to meet the first prong of the test set forth in *Thaddeus-X* because he did not engage in protected conduct. Defendants concede that the filing of a prison grievance is constitutionally-protected conduct for which a prisoner cannot be retaliated against. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). However, Defendants assert that pursuant to *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000), an inmate only has a protected right to file grievances to the extent that the underlying grievance is not frivolous.

Defendants fail to note that the holding in *Herron* was subsequently limited by the Sixth Circuit. In *Bell v. Johnson, et al.,* 308 F.3d 594 (6th Cir. 2002), the Sixth Circuit addressed *Herron* and found:

> Even if we were to apply the standard announced in *Herron*, Bell's suit would still qualify as protected conduct. *Herron*'s ruling is limited to retaliation claims involving suits dismissed as frivolous. The Supreme Court's decision in *Lewis* [*v. Casey,* 518 U.S. 343, 353 n. 3 (1996)], upon which *Herron* relied, makes it clear that a claim need not be successful to be non-frivolous. *Lewis*, 518 U.S. at 353 nn. 203, 116 S.Ct. 2174. *Lewis* explained, for example, that the fact that a claim is procedurally defaulted does not necessarily make the suit frivolous. *Id.* at 353 n. 2, 116 S.Ct. 2174. Moreover, *Lewis* distinguished between "arguable" claims and "frivolous" claims, and explained that "[d]epriving someone of an arguable (though not yet established) claim inflicts actual injury because it deprives him of something of value-arguable claims are settled, bought, and sold." *Id.* at 353 n. 3, 116 S.Ct. 2174. Bell's suit lost at summary judgment; it was not dismissed as being frivolous. Therefore, the *Herron* rule would not apply in the instant case.

*Id.* at 607 n. 5.

Plaintiff claimed that Defendant Fleury withheld Plaintiff's breakfast in retaliation for "correspondence" Plaintiff had written to the Warden regarding his fear after staff told him that they would have him stabbed by another prisoner or hung by prison staff in his cell. Defendants state that the "correspondence" purportedly filed by Plaintiff in lieu of a grievance has never been produced and with no further support for the contents, it must be considered frivolous. However, as noted above, *Herron* is limited to retaliation claims involving suits which were actually dismissed as frivolous. In contrast to the situation addressed in *Herron*, a grievance filed regarding the threats alleged by Plaintiff above cannot, on its face, be considered frivolous. As noted by the court in the July 8, 2008, order on Plaintiff's motions (docket #31), Plaintiff's allegation that he wrote to the warden expressing fear for his safety is protected conduct. (July 8, 2008, order on Plaintiff's motions, p. 13, docket #31.)

Defendants also claim that Plaintiff has failed to show that the alleged misconduct of Defendant Fleury was motivated, at least in part, by protected conduct. However, this issue was previously addressed by the court in the July 8, 2008, order on Plaintiff's motions. In that order, the court stated:

> "Recognizing that the ultimate fact of retaliation for the exercise of a constitutionally protected right rarely can be supported with direct evidence of intent that can be pleaded in a complaint, . . . courts have found sufficient complaints that allege a chronology of events from which retaliation may be inferred." *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "Conversely, alleging merely the ultimate fact of retaliation is insufficient." *Id.* Here, upon reconsideration, the court concludes that plaintiff's complaint does set forth a chronology of events from which retaliatory motivation on the part of defendants Fluery and Cromel could arguably be inferred. These alleged events include plaintiff's letter to the warden expressing fear for his safety and health, followed by Fluery's search of plaintiff's legal materials (during which Fluery could have seen a copy of the letter), followed

> by Fluery's admonition to plaintiff to "be careful," followed by
> Fluery's accusing plaintiff of misconduct, backed up by a witness
> statement from Cromel.

(July 8, 2008, order on Plaintiff's motions, pp. 13-14, docket #31.) Defendants have failed to come forward with any additional information which would change the court's ruling on this issue.

Further, Defendants claim that Defendant Fluery is entitled to summary judgment on Plaintiff's retaliation claim because Plaintiff has not shown that he was subjected to an adverse action that would deter a person of ordinary firmness from engaging in the protected conduct. Defendants assert that a person of ordinary firmness in Plaintiff's position would not be discouraged from filing grievances by a misconduct ticket because Plaintiff is serving a life sentence and was already in administrative segregation. However, Defendants fail to note that the more misconduct tickets Plaintiff receives, the less likely it is that he will be released from administrative segregation. The court concludes that the threat of an extended loss of liberty as the result of misconduct convictions would deter a person of ordinary firmness from engaging in protected conduct.

Finally, Defendants assert that the misconduct report would have been written regardless of whether Plaintiff was engaged in protected activity. In support of this assertion, Defendants Fluery, Cromell, Ollis and Blackford offer their affidavits, all of which indicate that their actions were motivated by Plaintiff's immediate conduct at the time of the ticket, rather than by any prior protected activity. In addition, Defendants state that the fact that Plaintiff was found guilty of each misconduct ticket following a hearing is evidence that the tickets were not motivated by a desire to retaliate against Plaintiff. In support of this claim, Defendants offer copies of the misconduct hearing reports, dated June 10, 2004, and October 18, 2004 as Exhibits 1 and 2. According to the

June 10, 2004, hearing report, Plaintiff was found guilty of threatening to kill Defendant Blackford on June 4, 2004:

> DOCUMENT: Prisoner claims that he has written kites to the warden and the grievance coordinator about Fluery and staff's threats to kill him. There is no reason to doubt his claims that he has written these letters. It is not necessary to verify that what [sic] is not in dispute.
>
> QUESTIONS: Questions to Trierweiler, grievance coordinator, about the prisoner's kites to him, also do not need to be answered. First, questions pertaining to the prisoner's complaints about staff are not necessary as, again, there is no reason to doubt the prisoner's claims that he has written such complaints. The officer's "motivation" is also irrelevant as it is the prisoner's actions that are in question. The officer wrote the misconduct, what is important is the prisoner's own actions. Prisoner's question about [Sergeant] Adams appears to be pulled out of thin air as there is no reason to believe that Adams instructed the officer to write the misconduct, but even if the Sergeant had instructed the officer to write the misconduct, it wouldn't prove that the prisoner did not threaten the nurse. The last question is nothing but abuse towards the officer. There is no doubt that the prisoner designed this question for the sole purpose of being abusive.
>
> THREAT: On 6/6/04 the prisoner stated to the officer, "I'm going to kill that bitch ass Blackford." This statement expressed the intent to physically assault the nurse. Prisoner intended to cause fear of physical harm in the officer for the nurse as he looked directly at the officer when he made his claims in a credible manner at the hearing. Second, prisoner claims that when he pulled a pair of pants off the vent, the officer said he wasn't ready for breakfast and refused to unlock his cell. This makes no sense at all. It even makes less sense that the officer would decide on this basis to fabricate a misconduct and claim that the prisoner threatened a nurse. Third, prisoner established through his own witnesses that he was upset with the nurse. This would be consistent with the officer's claims about the threat. Fourth, prisoner's written statement did not have the ring of truth. It was just too far-fetched. Prisoner's description of the threats against him just have the sense of not being "real" but a product of an active imagination. Fifth, that would be consistent with the officer's claims as to the prisoner's threats. Sixth, prisoner's witnesses did nothing for the prisoner. Half of his witnesses did not want to make a statement for the prisoner and the other ones explained why the

prisoner was upset with the nurse. Officer factual and credible in his claims. Despite the prisoner's claims to the contrary, Cromell's statement was consistent with the reporting staff member. Charge upheld.

(Defendants' Exhibit 1.)

Furthermore, the October 18, 2004, hearing report indicates that Plaintiff was found guilty of insolence and threatening behavior following an incident which occurred on October 7, 2004. The hearing officer made the following findings:

> INSOLENCE: On 10/7/04 the prisoner called the nurse a "ho ass bitch, shit" and hit his cell door, stating, "I'll get you, you ugly bitch." This statement and action was done to harass and degrade and cause alarm as there was no other purpose for it. Prisoner intended to harass and degrade and cause alarm as he directed this to the nurse when he believed she did not give him the full prescription. Prisoner admits that "this writer kicked his cell door and stated to Blackford, "If you don't get my meds down here I'll be filing a lawsuit on both you and Ollis too." This is not much of a defense as this version supports the charge as well. The comment was done to harass and degrade and the kicking was done to cause alarm. Prisoner, however, is not believed in his version. First, what he did admit displays a lack of respect, which would be consistent with the nurse's claims. Second, his derogatory comments about the officer and the nurse in his written statement also would be consistent with the nurse's claims as to what was said. His own statement left no doubt that this incident happened as described by the nurse. Third, his leading questions to his witnesses did little for his credibility. Fourth, he did not present his claims in a credible manner at the hearing. Nurse factual and credible in her claims and supported by a statement from Ollis. Charges upheld.
>
> THREAT: Prisoner's comments and actions constitute only one misconduct and one charge is appropriate. The threatening charge is being dismissed as the weaker charge. It is possible that hitting a cell door when staff is standing by it and saying "I'll get you" would support a threatening behavior charge, but there are not enough of facts [sic] to make that determination. The officer's claim that "the hole [sic] time the prisoner was banging on his door" would seem to indicate that the prisoner was having a temper tantrum more than

> punching the door to demonstrate an intent to strike the nurse. Prisoner's comments that he would "get the nurse" could be read a number of different ways, some of which would be non-physical. Charge is not upheld as it is duplicative of the insolence count.
>
> DISQUALIFICATION: Prisoner claims that the witness, Ollis, is not only having an affair with the reporting staff member but with Nurse Maki, who is "blood relative" of the Hearing Officer. It is not believable that the officer would admit to the prisoner such personal details. Prisoner's claims are only seen as an attempt to further harass and degrade staff. Regardless, this is not grounds to disqualification. Besides, Nurse Maki is not a relative of the Hearing Officer. Prisoner's other grounds for disqualification, which are generalized complaints, are equally without merit. It should be noted that Hearing Officer has no prior knowledge of the facts surrounding this misconduct report.
>
> POLYGRAPH: Polygraphs are inadmissible into evidence and are irrelevant. Live testimony is not required as the Hearing Officer is able to make a decision based on the record presented.

(Defendants' Exhibit 2.)

The court notes that a finding of guilt on a misconduct charge based on "some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'" *Clemons v. Cook, et al.*, 52 Fed. Appx. 762, 763 (6th Cir. Dec. 11, 2002) (*citing Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994)). As noted above, Plaintiff was found guilty of the alleged misconduct following a hearing. A review of the hearing reports indicates that the convictions were based on "some evidence" of a violation of prison rules. Therefore, the court concludes that Defendants are entitled to summary judgment on Plaintiff's retaliation claims.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' motion for summary judgment. Accordingly, it is

recommended that Defendants' Motion for Summary Judgment (Docket #80) be granted and that this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley  
TIMOTHY P. GREELEY  
UNITED STATES MAGISTRATE JUDGE

Dated: January 8, 2010